2-17-005 Nationstar Mortgage, LLC v. John Gazdik Also termed Gazdik, unknown heirs of reputees of John Gazdik, unknown owners of non-authorized claims. Defendant's affidavit. Fragment on behalf of the plaintiff's defendant, Mr. Harry N. Hartley Fragment on behalf of the defendant's affidavit, Mr. Robert T. Hanley Mr. Arger Good morning Good morning. You may proceed. Thank you, Your Honor. I'm going to introduce the court. Counsel, as the record states, my name is Harry Arger. I'm here for the plaintiff, Nationstar, which is also the appellant here. This is a case, there was a judgment, a foreclosure case entered against us that we're looking to have reversed. As long as it was the few more than one with that. In getting ready for this argument this morning, you know, I was looking through all the cases, re-reading them and that, and I found somewhere across a quote in the Curzon case, and it seemed appropriate. It's what we're really doing here. The quote is, in that case, nowhere do they deny they had a valid loan secured by property they own, which they failed to pay, and which requires the property to be sold to pay the debt. That's really what we're talking about here. The issue really comes down to, there were some side issues in the trial court that I'll try to explain if you ask me. We've dealt with many of those in our brief, but what comes down to- Explain to me why, if there was an agreed order that said that the evidence relating to whether or not there was proper proofs will relate to documents attached to the complaint or provided in discovery, and then during argument, you or the trial counsel makes reference to taking judicial notice of an assignment from the loan company to the bank proper, I believe it was, which would have then established a chain of assignment. Am I correct? There was an order entered on March 22nd, 2017. There was some discovery issues. There's a couple things. I'll try to be brief as I can in answer to that, but there's a history to this case. There's a couple significant things. First thing is, the defendants appeared and answered in January 2013 and admitted standing. They admitted that- Was standing mentioned in any of the defendants' filings? Well, the word standing is not mentioned because I think the trial judge indicated that as well. And wasn't the position of the defense always that they were not challenging standing, but the insufficiency of the complaint, no assignment, no endorsement to nation stuff? And there's a gap in assignments. I don't think they're challenging the endorsement to nation stuff. I think what they're saying is somewhere along- We didn't prove every step of the chain. And our response to that, Your Honor, is that we don't have to prove every step of the chain. And that's where we get in the prima facie case under the mortgage foreclosure law. You just have to establish, which we did. We have a copy of the note, a copy of the mortgage. We allege the capacity to sue. And that's where I was going with respect to Judge McLaren's answer. My question is, you go back to January of 2013, they admitted we had the capacity to sue it. Whether you call it capacity to sue, whether you call it standing, or whether you say somehow along the chain we didn't do it, we're really talking about the same issue. And that's why you see so much of our brief devoted to standing as an affirmative defense. I think that's clear in the law. What is the rule in Falcon Funding? What's the rule? Could you repeat that? What is the rule in Falcon Funding? Isn't it that a party can raise an affirmative defense in a motion for summary judgment without first raising it as an affirmative defense in an answer? They can raise it, but you can't even take it into two. They can't say, hey, we're not talking standing in summary judgment, and then say later we're raising an affirmative defense of standing in our summary judgment please. Which is it? We think, fine, we make an argument on waiver based on the case law that says, you know, we talk about that. They did file a cross-motion for summary judgment, correct? They did. But what I'm asking, what I'm saying is, again, and this is something the chalkboard is focused on, the word standing isn't in the brief, right? Okay, well, you can't say they're raising the affirmative defense of standing now if you're saying they didn't raise it. We think the issue is raised, whether you call it capacity, standing, whatever you call it. We go back to the mortgage foreclosure law that says, what do we have to establish to foreclose? You present a prima facie case. They challenge it. And once they challenge it, you must rebut the challenge that there's not a complete chain of assignments set forth in a complaint or in the discovery, which you agreed to in the agreed order, that you would not bring in any other documents that were not either attached to the complaint or furnished in discovery. A couple things on that. We didn't agree. We don't agree. I don't agree as the appellate counsel that we need to establish every step of the chain. I just don't think that's the law, and there's never been any citation in any case that says that. We just referred to a prima facie case. It was not a prima facie case. And your argument is, despite any challenge, you were entitled to relief? Yes. But in addition to that, going back to this March 22, 2017 order, which, again, I wasn't personally involved in it, but I've read all the pleadings like your honors have, my understanding is you've got to go back to what was at issue at that time. The answer at that time had admitted the capacity of the suit. Now, granted, they then later, a month later, leave to amend their answer, but even in the answer, they admit that various information about the mortgage, they admit the name of the mortgage, all the recording. They admit that MERS is the mortgagee's nominee for First Magnus. And if you go through that, again, we did go back. We didn't need to. We didn't need to go through all the assignments that are recorded, and they're in the recorder of deeds office in Kane County. If anybody has a chance to look at them, it goes from First Magnus to MERS to Aurora Loan to Aurora Bank to the nation's top. They're all recorded, right? And that's why I go back to that initial statement, because that's clearly what we're talking about here. But if you go back and you say, okay, fine, on this March 22nd order, long answer to your question. I told you it would be long. The discovery that was asked, there were six requests for reduction and four requests to admit, and one of the requests to admit that we did answer, we denied that all the documents relating to the mortgage had been produced. That was a denial of that. The reason being because if you want every piece of paper, these loan files are quite voluminous, right? And the way they look at it, there was no question. We weren't a wordsmith. There was no question like, give us all the power of attorneys. There was no question like that. It was just, here's anything related to assignments to Nation Star. And they said, well, you have that. You have that. Fine, we'll agree to this March 22nd order. You have that. We've got the assignment attached to the complaint from Aurora Bank to Nation Star. You've got that document. That's all you need. That's what my understanding, in talking to the trial counsel, that was what they thought they were doing. What we get to, though, is there's no review for summary judgment. Why the agreed order, then? Why would you agree to an order after there's a motion for a rule of show cause? Why would you ever agree if that's the position you're taking? Why would you take the position in the trial court and make that argument as opposed to entering an agreed order? What's the effect of the agreed order? I think the effect of the agreed order is to move the case along. I mean, there are several things that happen in these cases. The case was filed December 2012. They appear, per se, in January 2013. Effectively, they admit everything, entitling us to judgment at that time. There's a couple years of lost mitigation issues. Counsel gets hired in August of 2014. August of 2014. They don't amend the answer for another two and a half years. They don't even raise any of these issues for two and a half years. So why is there this? I can't explain it, but that's what happens. And getting back to that order, I think it was let's just get what we have, what we need. We've got an answer that admits we've got capacity, admits the amounts of default. Even to this day, they've never questioned the amounts of the default. They've never questioned that John Gastic is the owner. I'm going to talk about the ALFA thing in a second because I know somebody is going to ask me about that. If not, counsel will probably bring it up. But in answering your question, Your Honor, I think they just want to move the case along. They felt like we've given you, we looked at the four corners of those requests, and my understanding is they felt like, you know what? Anything related to the assignments to NationStar, we've given you that. Well, in looking at the complaint, it's obvious that there's a gap between Aurora Loan and Aurora Bank. Well, it's obvious. It doesn't take rocket science to figure it out. A couple things. Again, on the NOVA review, we would encourage the court to look at those things that were struck from the record, which we think was an abuse of trial court's discretion. But if you follow that, it's clear. There's a couple things that judicial notice could have been taken up, which was requested by trial counsel. How is it an abuse of discretion to comply with an agreed order? It's almost like saying that it's okay to appeal when the appellant has invited error. Well, I think the abuse of the discretion was to read that agreed order to exclude these things that I don't think were required under that agreed order. These are issues that came up later with regard to powers of attorney. Isn't it a fact that the assignment in question was never produced in discovery? Well, I'm not exactly sure which assignment in question you're talking about, but the assignment to NationStar was attached to the complaint. It was produced. We're not talking about NationStar. We're talking about the Aurora loan to Aurora Bank, right? That's the critical one. Again, Aurora loan to Aurora Bank was recorded. It was not produced. You're right. And we don't think that necessarily was required to be produced based on the forecourt of those requests. The order said the plaintiff would be barred from introducing any document not attached to the complaint and not providing a plaintiff's discovery response. I mean, this case is really all about whether or not litigants should be held to their agreements. But, again, I go back to that place and time on March 22nd. The current answer by the defendant said they admitted capacity to sue. They could admit all things with regard to the mortgage. And at that time, there wasn't an issue about this. Now, granted, we're only talking a month later. This case has been pending since 2012. All this activity is from March to basically June of 2017. But I think what happened there was, again, I go back to, I don't think those things are necessary for us to get a judgment of foreclosure, frankly. But we didn't need to give the court all the recorded assignments. They're all in the recorder of deeds office. They're all there. They go from start to finish. They're all there. And why they weren't produced previous to that, I have to assume that counsel just didn't think they were responsive to the requests. And when they make a blanket assertion and agree to that order, like I said, well, if we were wrong, shouldn't we hold this client to his mistake instead of imposing his mistake upon the opposing parties? Well, again, I don't view it as a quote mistake. What I view it as is an understanding that as soon as they file their motion for summary judgment, which is, I think, a month and a few days later, our response to their motion for summary judgment was, here's all this information. Here it is. And I understand what you're saying about, well, you can't play fast and loose with these orders, but go back in time to what the mindset and what the pleading stage was at the time of March 22nd. You know, in reading these cases, I tended to have this prejudice where I hypothecated and say, in my mind, this is the way I think it should have been handled if it was going to be optimally handled. And but for the fact that there were attorneys' fees assessed in the amount of $25,000, I don't know why the bank didn't just refile the case again and this time attach that which they didn't produce. They entered an order saying that that which was not produced will not be considered. When you refile that agreed order and the prior rulings will have no effect, assuming that the mortgage payments haven't been made in a timely fashion up to the current point in time. So insofar as your prejudice is concerned, when the ruling was made, why was it not just refiled and have the assignment in question attached, produced, whatever, unless, of course, you want to appeal the assessment of fees for the Chinese fire drill that ensued below? Well, we are appealing the assessment of fees, but getting more to the point of your question, I think what it comes down to, Judge, is we just feel that the trial court was improperly granted summary judgment to them, requiring us, I don't think the law requires every step of the chain to be attached to a complaint. Now, the issue on the discovery is separate, right? Again, we're going to disagree about whether that's called for or not. You're talking to somebody that worked for the Chicago Title Trust for 14 months as an assistant unit manager who used to have to examine titles and had to literally go to the track books and look at the chain of title and determine whether or not the documentation was within the chain of title. And if it weren't, you're SOL. No dispute to that. What I'm saying is do we have to attach everything to the complaint? That work was done. That's why as soon as the question was raised in the defendant's motion for summary judgment, boom, our response is, here, you want all the chain? Here it is. They have the information. That work was done, Your Honor, and the chain is complete from start to finish. The only question I was raising was like, well, do we need to attach every step along the chain? Some of these things, with some of these master pooling and servicing agreements and murderers and all this stuff, it's going to be pretty cumbersome to put all the chain of assignments in there. That's why we think under the law, in the cases we've signed our brief, we need to attach the note and the mortgage and show that we're a holder of the indebtedness. We've done that. They admitted. They even admitted that our assignment was recorded. They just are going back again. We get into this, was that an affirmative defense or not? Or are they just challenging? They're also holding you to the agreed order. And the argument is the assignment chain associated with the note and attached to the complainant's parlor note does not confirm the plaintiff's clear right to hold the note. That's the position. And they're holding you, the bank, to the agreed order. But, again, I don't think the agreed order should be read as broadly as the defendant is reading it. And secondarily, more importantly, is even though we had no obligation to do so, we did provide all that information to the trial court. The information was there. And now it's are we putting semantics above what's just? And that's why I read that quote from the beginning. Thanks for your time. Thank you. You'll have an opportunity to make your vote. Thank you. Mr. Hanlon, you may proceed. Thank you, Your Honor. Please support the opposing counsel. As I was listening to the argument that ensued prior to me stepping up, you've, in essence, addressed what I would characterize as the principal issue in this case. My opposing counsel makes note of an admission in an earlier answer with respect to the pro se litigants representing themselves. And it was only after consultation with my opposing counsel below that, and their agreement to amend the answer, that we filed that amended answer. Also, I heard a little bit of discussion with respect to why there was a delay in some of the things that I did. And that's because in the court below, there's a lot of informality between counsels in which we've asked to exchange certain documents and information. Because ordinarily, at least by that point in time, the Supreme Court rules had changed to require that they be attached to their respective complaints. So exhausting that informal, cajoled manner of opposing counsel, I had to put pounds on discovery to get to the matter. No answer, no answer, no answer. You see that with respect to the procedure. There were two separate occasions in which prior to actually filing that petition for rule to show cause, I was exasperated with my opposing counsel. The reason I filed the petition for rule to show cause was, is it was this universe of documents. They had their burden. I had to defend the case. And if I can't get an answer from them, then I need to know why. So when that agreed order was entered, it was entered because the plaintiff was facing sanctions for his repeated noncompliance with order after order after order. Counsel argues that they were voluminous requests, unnecessary requests. Then he could have raised an objection. He could have raised an objection. He could have raised that with me. But he didn't. And when I articulated it to him, I just wanted to know what the universe of documents is so I don't get a surprise later. So if they were overly broad, the obligation of trial counsel was to object to it. He never objected to it. We came to the point of the petition for rule to show cause. He, in fact, I think if my memory serves correctly, there were representations that those documents were all going to be delivered to me. Then after the petition for rule to show cause, then I get this representation there are no other documents. Let me be clear with this. The entire universe, this is it. And that's it. Well, then let's put that in an order. That order was drafted in part by both counsels in this case. It was exchanged between us. And so when he represented to the court, and if you look at the representations in that order, it is the point of making a representation of a material fact, you know, that should have been known to an attorney of record as to what the scope of documents was. And when he made that representation, what they are now doing is saying, well, that representation was false. In other words, he made a known misrepresentation of a known fact of a material issue in a complaint to a court. And now I'm going to, and in exchange for that, they got off the hook on the petition for rule to show cause. They got discovery to close, and they got my agreement to proceed with the case at that point in time based upon those representations. Could the trial court have sue a spot they've taken judicial notice of the records that have been recorded with regard to the assignment from Aurora Loan to Aurora Bank? I don't believe that the trial court could do that to a spot. And that would be because of the agreed order? Yes, Your Honor. In fact, Judge Bowles even made a point that they made an agreement that she was going to hold them to it. And the, it's an issue of playing fair. And the fairness of why we have the rules and why we came to an agreement, we came to that agreement because of the shenanigans that had preceded it. And we come to that agreement at the point in time of the agreement that is, this is the whole scope. And importantly, when you agree to be barred from using any other document in evidence, you ought to know what that means if you're a licensed attorney. It was in the agreed order. From my standpoint, I don't want to repeat why my opposing counsel did what he did. I suspect that he may have had personal motives. He may have wanted to avoid embarrassment. I don't know. And it's really not my concern. My concern was that I need to understand what the scope of things was. But one of the important things was that they were supposed to, if they were going to provide an affiant, they were supposed to provide that affiant for me to take a deposition of. They didn't do that either. So then they come to court and say, oh, forget that 322 order. We didn't really mean it. We had all this other stuff. The stuff that we've been secreting from the defense for this entire case. And that's the crux of it. That's why I refer to this as not your typical mortgage foreclosure, not a typical situation. We have a very unique order that came about under very unique circumstances in which both parties contributed to and they exchanged, in essence, consideration for that agreement. And when they exchanged that consideration for that agreement, that agreement ought to be enforced. And that's exactly what the court below did. They thought the argument that that agreed order was in the context of the discovery that was completed at that time and that was the pro se answer which admitted what's really at issue here. Well, I think that Justice McClaren said it aptly. Anyone looking at that complaint would have noticed the break in the assignment chain. Notwithstanding that, I've had a discussion with opposing counsel on that point. There's not the scope of that agreement wasn't arrived at in a vacuum. The scope of that agreement wasn't arrived at. Well, that's what he's saying. It wasn't arrived at in a vacuum. It was arrived at in the context of the answer that admitted it. Well, with the exception which was changed later. But if you look at the order, there was also the agreement to amend the answer. And so clearly the counsel knew and understood that that answer was being amended. So it was clear. Yes, it was clear at that time. And importantly, this issue of the availability of their affidavits to be deposed. Well, forget about that. We don't want to be bothered with giving you witnesses, giving you documents. You show up, you take a judgment against you, and you don't get to defend it. That was, in essence, the posture of the plaintiff. And I think if I take the elements that I articulated with respect to this agreed order that was entered, if we were to allow them to forget that agreed order, they would have been able to perpetrate a fraud upon the court and use it to their own advantage. This is not serious language. Perpetrating a fraud upon the court? Well, it's counsel. Are you fraud in Christ's knowledge that the attorney actually knew that he was going to be deposed? Well, isn't an attorney charged with the knowledge, you know, the things that he represents to the court? If I go to a court and I represent that no other documents exist, that's the representation. They don't exist. Then to say that he didn't know, that's chargeable against his client and that side of the defense. With respect to your argument about fairness and justice, everyone knows that now that there was an assignment from a lower loan to a lower bank, correct? No. I would disagree with that. The reason for that disagreement is at no point in time has the defense ever been able to explore this power of attorney that the reported assignment was explored under. And so because it was a representation that there was no other document, there was no person to explore that particular issue so that the defendant couldn't ascertain the truth and veracity of that document. And if it was done pursuant to a power of attorney, who issued the power of attorney? I also pointed out that accepting some of these entities as being lawful entities, there's also a separate power of attorney associated with one of those conveniences. Now, without the power of attorney, there's no way to ascertain whether or not that was a valid assignment. And without that, the defendant can't articulate this. And because the plaintiff represented that no other documents exist, there's this inherent problem that they can't overcome. Going forward, what's the path if we rule in favor of the defense? Do they get a free building, or can the bank refile this time with the proper chain of assignment? Well, I would say that if you were to rule in favor of the defendant, justice actually would be served. And justice would be served ostensibly because the court would be holding a large entity with billions of dollars to its word. That's the same kind of argument that they're asking the court to hold the potential borrower to their word in repayment of an obligation. When you suggest that it was a free building, I would suggest that I know that Alta Fern Gastic doesn't own the building. She doesn't have an interest in the building. I still don't know why she's a defendant in this case. They could not refile the case against her. Res judicata should apply. Well, no. Each time there's a nonpayment, that creates a clause of action. Sure. And then they would have a subject. So let's go forward and pick another date. Well, that would be the problem for the plaintiff. And I don't think that it's reasonable for me to speculate as to what they should or shouldn't do, or even seek my counsel in providing them the avenue to obtain a remedy. But it would seem to me, though, that the issues that they have today before this court are, you know, are they held to that 322 order? And that's what's critical today. If we want to set aside what's taking place below and inject the arguments that weren't made below or what they could do down the road, I don't believe that's proper before this court. I believe that what's proper before the court is to enforce the 322 order. Well, in the plaintiff's argument, they essentially are asking us to do justice based upon what is obvious or what is known. The assignment was recorded. And your argument is that we should not. We should enforce that order. And besides that, there's still an issue unresolved with respect to that assignment, correct? That's correct. And to assume that that is correct would be in error of this court. What about fees? How did you write the figure for fees? When I prepared the petition for fees, I used the Lodestar method. I do a lot of litigation in the United States District Court, and it's the same basic program that I use in my petition below. When I received the response to the motion, I was somewhat startled. The reason I was startled was because it said, court, give him $15,000. It didn't say he's not entitled to $15,000. It didn't say he wasn't entitled to fees. It said, give him $15,000. I've never seen an argument like that in a petition for fees, except in those situations in which my opposing counsels know and understand that the plaintiff's counsel is entitled to their fees. With respect to the arguments that the plaintiff now makes before this court with respect to that they shouldn't be applied, I believe it's erroneous because they weren't made below. So it's a question of how much fees are due, not a question of whether or not fees are due. And because they didn't preserve for appeal below that particular issue, they conceded it. When you look at the petition for fees, and importantly, we have one defendant here, Altaferne Gaston. As I said before, in the briefs, the court pointed to the ask below, why is she named? And there was no answer. Now, I can appreciate that someone might get confused, but I know that if Judge Kay Hamlin and the third municipal court in Roland Meadows were to get sued because I was sued in something, even though we're completely unrelated and don't know each other at all, that might be an injustice. So what you have here is you've got a party being named in a lawsuit, forced to defend a lawsuit, and the plaintiff has never really articulated why they're suing her. So as it comes to the attorney's fees... They were seeking a deficiency judgment. They were seeking a deficiency judgment. Well, actually, we didn't get to that point because we didn't get to a sheriff's sale. But the point is that the mortgage foreclosure statute says if you defend the lawsuit in mortgage foreclosure and you prevail, you get your attorney's fees. You know, she prevailed in the corporate role. There is not a reason I can speculate as to how you could properly name her in a subsequent action in order to take a judgment against her. So she'd be entitled to her fees anyhow. And the court below did not give us reasons why it picked almost the exact middle between the two respective parties' positions. I can speculate that if I'm a judge sitting in Judge Bull's position, I'm going to try to be as fair as I can with that, and that's the number she probably named was reasonable. And so when she picked a number that was reasonable, there was not... What was your request? $36,000. She awarded $25,000. She awarded $25,000. And they had asked that I be awarded $15,000. So I did not appeal her decision with respect to the amount. So I don't believe that the amount is properly before the court. And I believe that the question as to whether or not to do or not was properly was waived below when they agreed that the amount that I should be paid is $15,000. Any other questions? Thank you, sir. Thank you. Mr. Arger, you may proceed. I have a few things to say. I'll try to be very brief. On the Fern Gastic issue, I Googled and said, well, it is unusual that Anna is on the mortgage. She's not named. And I realized she died in November of 2012 at the age of probably 100, so she was not living at the time the foreclosure was filed in 2012. Fern is listed in the obituary as being John's wife. So I assume that she was named as possible. Again, just like they name unknown owners and unknown legatees and everything like that, she was named out of abundance of caution because she is. Is this in the record? It's not. But, you know, what's interesting about that is he's talking about this. We make the allegation at no time. Is there any evidence put forth by the defense as to why, as to get around the case, any evidence that she doesn't have an interest? But the interesting thing, too, is what I think Your Honor asked. Who's asked for the deficiency? The only person in the complaint the deficiency is against is John. And that's clear in the complaint. They're not seeking a deficiency against Fern. And, again, she was named out of abundance of caution on information that she may have an interest. If they can pull up any evidence that says she doesn't, she's gone. So that's one thing. Second thing, you know, we talk about this. The other thing I think is important is, you know, we've gone back and forth about what's fair, what's just, what's not on this order. But I think it's also interesting that this case had been pending for quite some time, and I've already been through why, in my understanding, again, I wasn't there on March 22nd. But, again, that was a different judge. It wasn't Judge Bowles. Judge Bowles didn't take this case until June of 2017. By that time, we had already filed our response to the assembly judgment which laid forth all these assignments. And we've got all these assignments now on the record. They're in the recorder of deeds office. If anybody cares to look at it as a title person, you can go back and find them. The complaint says Merz is the nominee for First Magistrate. They admit that. The plaintiff submitted a pro se, and counsel admitted it when he was their counsel. They admit Merz is the nominee for First Magistrate. So, at least with that admission, you go to the recorder of deeds office. We've got an assignment from Merz to Aurora Loan on April 29th of 2011 that's recorded May 6th of 2011. We've got an assignment from Aurora Loan to Aurora Bank on April 24th of 2012 that's recorded June 5th of 2012. We've got Aurora Bank assigning to Nation Star on June 28th of 2012 that's recorded 9-21-2012. What's important about all those dates, they're all before the complaint was filed in December 2012. The recorder of deeds office had all this information in there. I get it with the agreed order, but the agreed order, I'm not so sure they didn't object to some of those actually because I think what they did was respond on February 13th of 2017. Then, I'm reading the counsel's brief correctly. They're then saying there was some communication from after they received that response to this March 22nd order. Again, I'm not going to rehash what I went through on why that was, but we're talking about a case that's been pending for years. A lot of loss mitigation efforts have been made trying to help these people. What happens is they enter this March 22nd order and talk about unfair prejudice. Two months later, we're saying, all right, you want all that stuff because they filed their thing in April. We filed our response, I think, June 6th that has all these recorded attachments and power of attorneys and says, hey, don't forget, nation's dark choir, all the assets and servicing rights of Aurora Bank, which is a subsidiary of Aurora Loan. All that stuff's on the record basically less than two months after they filed their summary judgment motion, which is our first opportunity to file a response. To say that we're going to be prejudiced now, that based on some, and I don't want to use any kind of word about describing what was being done to counsel at that time to say, that is a great order. I get what they're saying, but let's be fair here. That order was entered to move this case along, and again, I don't think I wasn't there. It wasn't me, but I can tell you that my understanding is they had no idea of the consequence. They're looking at all the documents related to the assignment to nation's dark. They've got it. Here's the one. Here's the assignment to nation's dark. You have that document.  Well, you didn't ask for power of attorney. Now you want all these other things related to every assignment from first of August to Aurora Bank and Aurora Loan and all these things specifically you want. It isn't specifically asked that way. So that's all I have at that point. Both sides did. But I go back to good arguments here. One argument I want to get to. And you understand it, and I'm not saying that the change of judge had any effect on it either, but it didn't help because of maybe the consequence of what was entered on March 22nd. But I just think it's unduly prejudicial to my client to be held to that standard, to have to go through all this again and refile it. And we would either we'd love to see it reversed in our favor, but at a minimum reversed and remanded to follow up on these things. Let me ask you this. How did you arrive at this figure of $15,000 for fees in any event we rule in favor of? I think that it was an educated estimate based on looking at some things that, again, he said he was involved for five years. He knew I was involved for five years. Some of these court appearances, I think their admission they didn't attend. There was one at least I can think of in the briefing, I think. And then there may have been some comparison. I know in the Northern District of Illinois they compare what they want to see the fees of the other side. And I can tell you we're not billing $36,000 in this case. All told, trial and appellate counsel in this case. So a long-answer question. I don't have a specific answer. It's what you believe to be a reasonable estimate. That's correct. What else? If there's any further questions, I can answer. Very well. Thank you. Court is adjourned.